IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                :
CORTNEY D. HASSLER on behalf    :     HON. JEROME B. SIMANDLE
of himself and all others       :
similarly situated,             :     Civil No. 08-5800 (JBS/KMW)
                                :
              Plaintiffs,        :
                                :          OPINION
       v.                       :
                                :
SOVEREIGN BANK,                 :
                                :
              Defendant.         :
                                :
```

APPEARANCES:

Benjamin F. Johns, Esq.
Joseph G. Sauder, Esq.
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
    Attorneys for Plaintiff

William J. Desantis, Esq.
Rosemary Bates Walsh, Esq.
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
Plaza 1000 - Main Street
Suite 500
Voorhees, NJ 08043
    Attorneys for Defendant

**SIMANDLE**, District Judge:

I.    **INTRODUCTION**

     This matter is before the Court upon Defendant's motion to
dismiss the Complaint [Docket Item 6].  In this putative class
action, Plaintiff Courtney D. Hassler seeks to challenge a
practice of Defendant Sovereign Bank ("Sovereign") relating to
the bank's processing of its customers' electronic debit
transactions.  According to Plaintiff, Sovereign does not process

its customers' debit transactions in the order in which the transactions occur, but, rather, it reorders transactions from the highest dollar amount to the lowest dollar amount before processing the transactions, resulting in a greater likelihood of depleting account funds and a corresponding increase in the imposition of insufficient fund, or "overdraft," fees.  Although the terms of the "Personal Deposit Account Agreement" governing deposit accounts at Sovereign make clear that the bank reserved the right to process debit transactions in precisely the manner Plaintiff complains of, Plaintiff alleges that Sovereign violated New Jersey's Consumer Fraud Act, breached the covenant of good faith and fair dealing, and was unjustly enriched.

Defendant has moved to dismiss, arguing, <u>inter alia</u>, that Plaintiff has failed to state a claim for which relief may be granted.  For the reasons explained below, the Court agrees, and will grant Defendant's motion to dismiss.

## II.   BACKGROUND

### A.   Facts

The facts of this matter, taken from the Complaint and from the indisputably authentic copy of the agreement governing the parties' relationship attached to Plaintiff's opposition brief,[1]

---

[1]   <u>See</u> <u>Sentinel Trust Co. v. Universal Bonding Ins. Co.</u>, 316 F.3d 213, 216 (3d Cir. 2003) (when deciding a motion to dismiss, the Court may look to "indisputably authentic documents underlying the plaintiff's claims," such as the agreement upon which contract-based claims are based).

are as follows.  Plaintiff, a New Jersey resident, has had a free personal checking account with Sovereign since 2001.  (Compl. ¶¶ 5, 18.)  According to the Complaint, between August 28, 2008 and September 2, 2008, Plaintiff incurred two overdraft fees that he would not have incurred had Sovereign processed his debit transactions chronologically in the order in which Plaintiff made the transactions.  (Id. at ¶¶ 28-31.)  Specifically, on the morning of August 28, 2008, Plaintiff had an account balance of $112.35, and initiated a payment of $39.58.  (Id. at ¶ 28.) Later that day, Plaintiff made a debit card purchase of $140.00. (Id.)  Had Sovereign processed Plaintiff's transactions in the order in which they occurred, Plaintiff would have had sufficient funds to complete his first transaction but not his second transaction, and would thus have incurred only one overdraft fee. Instead, Sovereign "intentionally manipulated these transactions by rearranging them from largest to smallest so as to levy two insufficient fund fees against Plaintiff's checking account." (Id. at ¶ 29.)  That is, Sovereign processed Plaintiff's transactions for August 28, 2008 in descending monetary order rather than in chronological order, causing Plaintiff to incur overdraft fees for both his morning and afternoon transactions.

Similarly, on September 2, 2008, Plaintiff had an account balance of $126.52, and made two transactions: a purchase of $80.00 in the early evening, and a cash withdrawal of $404.50

3

later that evening.  (Id. at ¶ 30.)  Rather than processing these transactions in chronological order, which would have resulted in the imposition of a single overdraft fee for only the second transaction, Sovereign processed the transactions in descending monetary order, causing Plaintiff to incur two overdraft fees, one for each transaction.  (Id. at ¶ 31.)

Plaintiff alleges that he "depend[ed] on Sovereign to ensure that charges [were] posted to [his] account[] in the chronological order in which Sovereign receive[d] them."  (Id. at ¶ 19.)  Notwithstanding such alleged reliance, Plaintiff appears to acknowledge that Sovereign's "Personal Deposit Account Agreement" (the "Agreement"), which "contains the terms and conditions that apply to personal deposit Accounts at Sovereign,"[2] (Pl.'s Opp'n Br. Ex. 1 at 1), discloses the bank's policy of not processing debit transactions in chronological order.  (Compl. ¶ 20.)  Specifically, under the heading "Withdrawals" and in bold print, the Agreement provides:

> We reserve the right to pay the withdrawals you make from
> your Account regardless of the method of withdrawal in

---

[2]  In its opening paragraph, the Personal Deposit Account Agreement states:

> In the event of any inconsistency between this Agreement
> and any other agreement you may have with us, the terms
> of this Agreement shall govern.  Please read the entire
> Agreement carefully and keep it with your account records
> for future reference.

(Pl.'s Opp'n Br. Ex. 1 at 1.)

any order we determine.  This includes withdrawals made
at an ATM or by computer, POS purchases, checks, pre-
authorized payments and by any other means we make
available to you.   The order in which you make
withdrawals from your Account may not be the same as the
order in which we post those transactions to your Account
each business day.  Generally, we post your payment
transactions each business day in descending order,
starting with the largest payment order that is presented
for payment.  This means, for example, that your $900
mortgage payment will be paid before the $100 purchase
you made at the supermarket.  The order in which we post
your transactions may affect whether you incur fees for
insufficient or unavailable funds.

(Pl.'s Opp'n Br. Ex. 1 at 4-5.)

In addition, under the heading "Overdrafts and Unavailable

Funds," the Agreement states:

If you write a check or other order or otherwise request
a withdrawal from your Account, such as by using an ATM
or making a purchase using a Visa CheckCard or ATM Card,
for more money than you have available for withdrawal
from your Account, we may either permit you to withdraw
the funds by complying with the payment order or we may
refuse to honor the payment order.  You may incur a fee
for each payment order that is presented against your
account when you do not have sufficient available funds.

(Id. at 10.)  Finally, under the heading "Sovereign Visa

CheckCard or ATM Card," the Agreement provides:

You may . . . use your Visa CheckCard to pay for
purchases at any merchant displaying the Visa or Visa
debit symbol.  When you make a purchase using your Card,
the amount of your purchase is automatically deducted
from your checking Account.

(Id. at 19.)

## B.   Procedural History

Plaintiff filed this lawsuit against Sovereign pursuant to

28 U.S.C. § 1332(d)(2)(A) on behalf of himself and others

similarly situated [Docket Item 1].  Plaintiff alleges that
Sovereign violated New Jersey's Consumer Fraud Act, N.J.S.A.
56:8-1, et seq. (Count I), breached its covenant of good faith
and fair dealing with Plaintiff (Count II), and was unjustly
enriched (Count III).  Defendant thereafter filed the motion to
dismiss presently under consideration [Docket Item 6], to the
merits of which the Court now turns.

### III. DISCUSSION

#### A.    Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a
claim for which relief may be granted, the Court must "accept all
factual allegations as true, construe the complaint in the light
most favorable to the plaintiff, and determine whether, under any
reasonable reading of the complaint, the plaintiff may be
entitled to relief."  Phillips v. County of Allegheny, 515 F.3d
224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd.,
292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.
1955, 1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286

(1986)).  "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).  Courts may also, as noted above, look to "indisputably authentic documents underlying the plaintiff's claims," <u>Sentinel Trust Co.</u>, 316 F.3d at 216.

**B.   Analysis**

In its motion to dismiss, Sovereign argues that Plaintiff has failed to state a claim for which relief may be granted, arguing in essence that Plaintiff's claims are undermined by his failure to allege that Sovereign engaged in any conduct that was not expressly authorized by the plain language of the parties' Agreement.[3]  For the reasons that follow, the Court will grant Defendant's motion to dismiss.

**1.   <u>Consumer Fraud Act Claim</u>**

The Court first addresses Defendant's argument that Plaintiff has failed to state a claim under New Jersey's Consumer Fraud Act (the "CFA" or "Act").  The CFA provides in relevant

---

[3]  Because it agrees with Defendant that Plaintiff has failed to state a claim, the Court does not address Defendant's argument that Plaintiff's claims are preempted by the Home Owners' Loan Act ("HOLA") and the regulations promulgated thereunder.  <u>See</u>, <u>e.g.</u>, <u>In re Washington Mut. Overdraft Protection Litigation</u>, 539 F. Supp. 2d 1136 (C.D. Cal. 2008).

part:

> The act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud,
> false pretense, false promise, misrepresentation, or the
> knowing, concealment, suppression, or omission of any
> material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with
> the sale or advertisement of any merchandise or real
> estate, or with the subsequent performance of such person
> as aforesaid, whether or not any person has in fact been
> misled, deceived or damaged thereby, is declared to be an
> unlawful practice[.]

N.J.S.A. 56:8-2.  In order to state a CFA claim, a plaintiff must

allege "1) unlawful conduct by defendant; 2) an ascertainable

loss by plaintiff; and 3) a causal relationship between the

unlawful conduct and the ascertainable loss."  Bosland v. Warnock

Dodge, Inc., 197 N.J. 543, 557 (2009) (citation omitted).  "An

unlawful practice typically involves an affirmative act of fraud

and can arise from an affirmative act, an omission, or a

violation of an administrative regulation."[4]  Adamson v.

Ortho-McNeil Pharmaceutical, Inc., 463 F. Supp. 2d 496, 501

(D.N.J. 2006) (citations omitted).

Under the CFA, "[t]o constitute consumer fraud . . . the

business practice in question must be 'misleading' and stand

outside the norm of reasonable business practice in that it will

victimize the average consumer."  New Jersey Citizen Action v.

---

[4]  Courts in this District have recognized that CFA claims
targeting such affirmative fraudulent conduct "are subject to
Rule 9(b)'s heightened pleading standards."  Harper v. LG
Electronics USA, Inc., 595 F. Supp. 2d 486, 491 (D.N.J. 2009)
(citing cases).

Schering-Plough Corp., 367 N.J. Super. 8, 13 (App. Div. 2003)

(quoting Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139

N.J. 392, 416 (1995)).  Often, the determination of whether

business conduct "stand[s] outside the norm of reasonable

business practice" presents a jury question.  Id.  Nonetheless,

in recognition of the fact that the "capacity to mislead . . . is

the prime ingredient of all types of consumer fraud [under the

CFA]," Turf, 139 N.J. at 416, and that "[m]ere customer

dissatisfaction does not constitute consumer fraud," Van Holt v.

Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998),

courts have dismissed CFA complaints for failure to state a claim

where plaintiffs have failed to allege that the defendant engaged

conduct that could be considered misleading within the meaning of

the Act.  See, e.g., Adamson, 463 F. Supp. 2d at 501;

Schering-Plough, 367 N.J. Super. at 13; see also Wendling v.

Pfizer, Inc., 2008 WL 833549, at *4 (App. Div. Mar. 31, 2008);

Delaney v. American Express Co., No. 06-5134, 2007 WL 1420766, at

*7 (D.N.J. May 11, 2007).  In particular, where a CFA claim is

based upon an allegedly incomplete or misleading disclosure, and

where the parties' agreement "contain[s] the very information

that Plaintiffs allege was misrepresented, suppressed, or

concealed," dismissal for failure to state a claim is

appropriate.  Delaney, 2007 WL 1420766, at *7; see also Adamson,

463 F. Supp. 2d at 501 (dismissal appropriate where statements

"are not misleading or deceptive in any way"); <u>Schering-Plough</u>,
367 N.J. Super. at 13 (where the business practice alleged cannot
be considered "misleading" under a favorable reading of the
complaint, dismissal of CFA claim is called for).

In this case, the Agreement "contain[s] the very information
that Plaintiff[] allege[s] was misrepresented, suppressed, or
concealed." <u>Delaney</u>, 2007 WL 1420766, at *7.  Plaintiff's CFA
claim hinges on his allegation that Sovereign's "practice of
posting charges in a non-chronological manner is not adequately
represented in Defendant's terms of service."  (Compl. ¶ 43.)
This claim is unequivocally belied by the plain terms of the
parties' Agreement, which makes clear that Sovereign "reserve[d]
the right to pay the withdrawals you make from your Account
regardless of the method of withdrawal in any order [Sovereign]
determine[s]"; that "<u>[t]he order in which you make withdrawals</u>
<u>from your Account may not be the same as the order in which</u>
<u>[Sovereign] post[s] those transactions to your Account each</u>
<u>business day</u>"; that "[g]enerally, <u>[Sovereign] post[s] your</u>
<u>payment transactions each business day in descending order,</u>
<u>starting with the largest payment order that is presented for</u>
<u>payment</u>"; and that "[t]he order in which [the bank] post[s] your
transactions may affect whether you incur fees for insufficient

or unavailable funds."[5]   (Pl.'s Opp'n Br. Ex. 1 at 4-5) (emphasis added).   These terms simply "are not misleading or deceptive in any way," <u>Adamson</u>, 463 F. Supp. 2d at 501 – indeed, it would be difficult for Sovereign to have disclosed its "practice of posting charges in a non-chronological manner," (Compl. ¶ 43), in clearer or more understandable terms.   <u>See</u> <u>Turf</u>, 139 N.J. at 416 (the "capacity to mislead . . . is the prime ingredient of all types of consumer fraud" under the CFA).

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff suggests that the disclosure of Sovereign's policy is incomplete, focusing exclusively on the language quoted in Note 5, <u>supra</u>, and arguing that the disclosure "fails to explain whether it is referring to two debit transactions, does not state that the two transactions in the example both occurred on the same day, and does not even indicate which transaction actually occurred first."   (Pl.'s Opp'n Br. at 25) (footnote and emphasis omitted).   This argument is meritless, as the language targeted by Plaintiff and quoted in Note 5 is only ambiguous if it is read out of context and if the sentences immediately preceding it are ignored entirely.   <u>Cf.</u> <u>Certified Restoration Dry</u>

---

[5]   The Agreement goes on to give a clear and concise example of how this policy plays out: "[t]his means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made at the supermarket."   (Pl.'s Opp'n Br. Ex. 1 at 5.)   As the Court noted, <u>supra</u>, this entire disclosure appears in bold text in the Agreement.

Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 544 (6th
Cir. 2007) ("Courts cannot simply ignore portions of a contract
in order to . . . declare ambiguity") (internal quotations and
citations omitted).  In the very paragraph cited by Plaintiff,
the Agreement makes clear that the policy in question applies to
"withdrawals made at an ATM or by computer, POS purchases,
checks, pre-authorized payments and by any other means we make
available to you," that the policy is applied to transactions
made in the same "business day," and that "[t]he order in which
you make withdrawals from your Account may not be the same as the
order in which [Sovereign] post[s] those transactions to your
Account each business day."  (Pl.'s Opp'n Br. Ex. 1 at 4-5.)
Indeed, Plaintiff's argument only serves to highlight the
transparent and non-misleading nature of the Agreement's terms,
in that it is only by ignoring the language of the Agreement
itself that Plaintiff is able to suggest that the disclosure of
the policy in question is incomplete.

Next, Plaintiff refers the Court to the Agreement's
description of the "Sovereign Visa CheckCard," which states that
"[y]ou may use your Visa CheckCard to pay for purchases at any
merchant displaying the Visa or Visa debit symbol," and that
"[w]hen you make a purchase using your Card, the amount of your
purchase is automatically deducted from your checking Account."
(Pl.'s Opp'n Br. Ex. 1 at 19.)  Plaintiff, asserting that

12

"automatically" means "instantaneously," (Compl. ¶ 26), argues that this passage undermines the effectiveness of Sovereign's disclosure that the bank "post[s] [customers'] payment transactions each business day in descending order, starting with the largest payment order that is presented for payment."  (Pl.'s Opp'n Br. Ex. 1 at 4-5.)

This argument falters at the gate, however, on account of the fact that "automatic" simply is not synonymous with "instantaneous."  See, e.g., Triad at Jeffersonville I, LLC v. Leavitt, 563 F. Supp. 2d 1, 19 (D.D.C. 2008) (recognizing that "automatic" is not synonymous with "instantaneous").  The applicable definition of "automatic" is "having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation."[6]  Webster's New Int'l Dictionary 148 (3d ed. 1993).  That debit card purchases are deducted from customer accounts in a "self-acting" fashion (i.e.,

---

[6]  Plaintiff refers the Court to a different reference to define "automatic."  See MSN Encarta Dictionary, http://encarta.msn.com/dictionary_/automatic.html (last visited May 26, 2009) (defining "automatic" as "1. starting or functioning by itself: started, operated, or regulated by a process or mechanism without human intervention[;] 2. done by prior arrangement: beginning when specific conditions are fulfilled, without the need for a decision or action[;] 3. done without thought: done without conscious thought as the result of habit or custom").  Contrary to Plaintiff's argument, none of these definitions defines "automatic" as "instantaneous."  Put simply, an operation can occur in a self-acting fashion (that is, automatically) without occurring instantaneously.  See Triad, 563 F. Supp. 2d at 19.

without the need for additional action by the customer or by Sovereign) is not inconsistent with the Agreement's description of the process by which the deductions occur – that is, that payments are made in descending numerical, rather than chronological, order. Again, the Agreement "contain[s] the very information that Plaintiff[] allege[s] was misrepresented, suppressed, or concealed," Delaney, 2007 WL 1420766, at *7, and the fact that deductions occur in a self-acting manner does not undermine Sovereign's disclosure of its non-chronological debit processing policy.

Finally, Plaintiff draws the Court's attention to the Agreement's use of the term "may,"[7] arguing that by describing the actions that Sovereign "may" take or that charges customers "may" incur, the Agreement implies that customers are entitled to an unexpressed limitation on Sovereign's exercise of discretion under which Sovereign "may (or may not) re-order debit transactions from highest to lowest." (Pl.'s Opp'n Br. at 24) (emphasis added). This argument likewise lacks merit. While Plaintiff is certainly correct in observing that the Agreement authorizes, but does not require, Sovereign to process debit

---

[7]   E.g., "[t]he order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day," "[t]he order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds." (Pl.'s Opp'n Br. Ex. 1 at 4-5.)

transactions in a non-chronological manner, this does not render misleading Sovereign's disclosure of its transaction processing policy.  "The use of the term 'may' indicates that [Sovereign] has the ability, but is not required, to" reorder customer transactions in precisely the manner Plaintiff complains of. Netflix, Inc. v. Blockbuster, Inc., 477 F. Supp. 2d 1063, 1071 (N.D. Cal. 2007).  Again, the language of the Agreement is unmistakably plain, making clear that Sovereign "may" – i.e., is authorized to – process transactions in a non-chronological manner.  There is absolutely nothing misleading about this language, see Adamson, 463 F. Supp. 2d at 501, and Plaintiff's effort to read into the disclosure a limitation upon Sovereign's discretion over processing debit transactions in a non-chronological fashion finds no support in the language of the Agreement.

As the preceding discussion makes clear, the Agreement "contain[s] the very information that Plaintiff[] allege[s] was misrepresented, suppressed, or concealed," Delaney, 2007 WL 1420766, at *7, which means that Plaintiff has failed to state a CFA claim.  See Adamson, 463 F. Supp. 2d at 501; Schering-Plough, 367 N.J. Super. at 13.  There can be little doubt that Plaintiff finds Sovereign's policy of processing debit transactions in a non-chronological fashion to be disagreeable, but the policy in question was disclosed in unmistakable terms in the Agreement,

15

and "[m]ere customer dissatisfaction does not constitute consumer fraud." Van Holt, 163 F.3d at 168.  The Court will thus grant Defendant's motion to dismiss Plaintiff's CFA claim.

        2.  Breach of Contract Claim

The Court next addresses Defendant's motion to dismiss Plaintiff's claim that Defendant breached its contractual obligation to Plaintiff by violating the covenant of good faith and fair dealing.  In Count II of the Complaint, Plaintiff alleges:

> Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied.  Defendant may unilaterally choose whether to impose overdraft charges by posting transactions in any order Defendant wishes and by unilaterally deciding whether to honor requested transactions when consumers have insufficient funds. Because the occurrence, amount, and frequency of overdraft charges are set unilaterally by Defendant, Defendant has an obligation to impose overdraft charges on consumers' bank accounts in good faith.  Defendant has breached this obligation by intentionally delaying and rearranging the posting of transactions in order to maximize the amount of overdraft charges.

(Compl. ¶ 51.)  Plaintiff thus does not allege that Defendant violated an express term of the Agreement, arguing instead that Sovereign's imposition of overdraft charges violated its duty of good faith and fair dealing under New Jersey common law.

It is well established under New Jersey law that "[e]very party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the

contract." <u>Brunswick Hills Racquet Club, Inc. v. Route 18
Shopping Ctr. Assocs.</u>, 182 N.J. 210, 224 (2005).  While "a
party's performance under a contract may breach . . . [the]
covenant [of good faith and fair dealing] even though that
performance does not violate a pertinent express term," <u>Wilson v.
Amerada Hess Corp.</u>, 168 N.J. 236, 245 (2001) (citation omitted),
"the duty of good faith and fair dealing cannot alter the clear
terms of an agreement and may not be invoked to preclude a party
from exercising its express rights under such an agreement."
<u>DiCarlo v. St. Mary Hosp.</u>, 530 F.3d 255, 267 (3d Cir. 2008)
(internal quotations and citations omitted).

 In the context of contracts that "vest[ ] unilateral
discretion . . . in one party" – whether to fix a price, to order
a quantity of goods, or to control "other conditional aspects of
a contract" – the New Jersey Supreme Court has explained:

> The fact that a discretion-exercising party causes the
> dependent party to lose some or all of its anticipated
> benefit from the contract . . . is insufficient to
> establish a breach of contract by failing to perform in
> good faith . . . . [The dependent party must instead
> allege] <u>bad motive</u> in order to assert successfully a
> claim of breach of the implied covenant of good faith and
> fair dealing.

<u>Wilson</u>, 168 N.J. at 245-46, 249 (citations omitted, emphasis
added).

> A plaintiff may be entitled to relief in an action under
> the covenant if the defendant acts with ill motives and
> without any legitimate purpose to destroy the plaintiff's
> reasonable expectations.  However, bad motive or
> intention is essential, and <u>an allegation of bad faith or</u>

> unfair dealing should not be permitted to be advanced in
> the abstract and absent improper motive.

Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 329
(3d Cir. 2006) (internal quotations and citations omitted,
emphasis added).

As these cases make clear, because "a party does not breach
the implied covenant of good faith and fair dealing merely
because its decisions disadvantaged another party," a plaintiff
cannot satisfy the "improper motive" element of a claim for
breach of the covenant of good faith and fair dealing by
alleging, without more, that the defendant's discretionary
decisions benefitted the defendant and disadvantaged the
plaintiff.  Id.; see also, e.g., Wilson, 168 N.J. at 246, 251
(exercise of discretion for "ordinary business purposes" does not
constitute improper motive, and "[w]ithout bad motive or
intention, discretionary decisions that happen to result in
economic disadvantage to the other party are of no legal
significance"); Capital Safety, Inc. v. State, Div. of Bldgs. and
Construction, 369 N.J. Super. 295, 301 (App. Div. 2004);
Boardwalk Regency Corp. v. Unite Here Local 54, No. 08-0016, 2009
WL 540675, at *8 (D.N.J. Mar. 3, 2009).

That is precisely what Plaintiff alleges here.  As the Court
explained, supra, the Agreement expressly authorizes Sovereign to
"post [customers'] payment transactions each business day in
descending order, starting with the largest payment order that is

18

presented for payment." (Pl.'s Opp'n Br. Ex. 1 at 5.)  The
Agreement further acknowledged that Sovereign's reordering could
result in Plaintiff's incurring of overdraft fees, stating, "The
order in which we post your transactions may affect whether you
incur fees for insufficient or unavailable funds." (Id.)
Plaintiff alleges that in processing debit transactions in
accordance with these provisions, Sovereign intended to benefit
itself by "maximiz[ing] the amount of overdraft charges," (Compl.
¶ 51), and that this conduct worked to Plaintiff's disadvantage.
But it does not satisfy the improper motive element of a good
faith performance claim for a plaintiff to allege merely that its
contractual partner exercised the discretion expressly afforded
to it under the agreement "to serve [its own] financial
interests," Stony Brook Constr. Co., Inc. v. College of New
Jersey, 260-01, 2008 WL 2404174, at *7 (App. Div. May 24, 2004),
or to "maximize [its] profits," Wilson, 168 N.J. at 248 (citation
omitted), and that this decision worked to disadvantage the
complaining party.  See Elliot & Frantz, 457 F.3d at 329; cf.
Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d
275, 288 (3d Cir. 2000) (citing a party's collusion with third
parties against its contractual partner as an example of improper
motive); Boardwalk, 2009 WL 540675, at *8 (intent to injure
contractual partner is an example of improper motive).  The
Agreement permitted precisely this reordering and fee incurral to

19

happen, to the advantage of Sovereign.

Because even the most favorable reading of Plaintiff's allegations fails to suggest that Sovereign exercised its discretion under the Agreement for an improper motive, and because "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive," Elliot & Frantz, 457 F.3d at 329 (citation omitted), the Court will grant Defendant's motion to dismiss Count II of the Complaint.

### 3.   Unjust Enrichment Claim

Finally, the Court agrees with Defendant that Plaintiff has failed to state a claim for unjust enrichment.  Plaintiff alleges, in general terms, that in entering into a deposit agreement and providing overdraft payments to Sovereign, he conferred a tangible economic benefit upon Sovereign for which he would have expected remuneration.  (Compl. ¶ 55.)  To state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable."  Wanaque Borough Sewerage Auth. v. Twp. of West Milford, 144 N.J. 564, 575 (1996) (citation omitted).

A party cannot satisfy this second prong, however, unless it can establish that "the failure of remuneration enriched defendant beyond its contractual rights."  VRG Corp. v. GKN

Realty Corp., 135 N.J. 539, 554 (1994) (emphasis added).  As this requirement makes clear, "the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract." Dovale v. Marketsource, Inc., No. 05-2872, 2006 WL 2385099, at *8 (D.N.J. Aug. 17, 2006) (citation omitted); see also McCalley v. Samsung Electronics America, Inc., No. 07-2141, 2008 WL 878402, at *10 (D.N.J. Mar. 31, 2008); Adamson, 463 F. Supp. 2d at 505; St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n, No. 04-4540, 2005 WL 1199045, at *8 (D.N.J. May 18, 2005).

As the Court explained, supra, the Agreement expressly authorized Sovereign to "post [customers'] payment transactions each business day in descending order, starting with the largest payment order that is presented for payment," advising customers that "[t]he order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day," and that Sovereign's policy of posting transactions in descending numerical order could result in the imposition of overdraft fees. (Pl.'s Opp'n Br. Ex. 1 at 4-5.)  The conduct underlying Plaintiff's allegations was thus "permissible under the terms of an express contract," Dovale, 2006 WL 2385099, at *8 (citation omitted), meaning that Plaintiff has failed to allege that Defendant was "enriched . . . beyond its contractual rights," VRG

<u>Corp.</u>, 135 N.J. at 554, and has failed to state a claim for unjust enrichment. <u>McCalley</u>, 2008 WL 878402, at *10; <u>Adamson</u>, 463 F. Supp. 2d at 505; <u>St. Matthew's</u>, 2005 WL 1199045, at *8. The Court will accordingly grant Defendant's motion to dismiss Count III of the Complaint.

> 4.   <u>Dismissals With or Without Prejudice</u>

The Court has considered whether the dismissals herein of Counts I, II, and III should be without prejudice to leave to amend, as Plaintiff requests,[8] or with prejudice.  Under the Federal Rules of Civil Procedure, leave to amend a complaint that fails to state a claim is to be "freely given, in the absence of circumstances such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment." <u>Jablonski v. Pan American World Airways, Inc.</u>, 863 F.2d 289, 292 (3d Cir. 1988) (citing Fed. R. Civ. P. 15(a)); <u>see</u> <u>also</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004); <u>Lake v. Arnold</u>, 232 F.3d 360, 373 (3d Cir. 2000).  Amendment of a complaint is futile if an amendment would not cure the deficiency in the original pleading or if the proposed amended pleading would not survive a motion to dismiss.  <u>See</u> <u>Jablonski</u>, 863 F.2d at 292.

As the Court recognized in Note 8, <u>supra</u>, Plaintiff has not

---

[8]  Plaintiff has simply noted, in Pl.'s Opp'n Br. at 5 & 34, that any dismissal of the Complaint, in whole or in part, be without prejudice.  Plaintiff has not suggested any particular amendment he would seek in response to Defendant's arguments as to any of these claims.

suggested any amendment that would cure the deficiencies in the
Complaint which Defendant identified in its motion to dismiss.
Upon consideration of the parties' Agreement and the claims
asserted herein, the Court is convinced that it would be futile
to permit an amended pleading.  First, as to Plaintiff's CFA
claim, as the preceding analysis makes clear, the plain language
of the parties' Agreement "contain[s] the very information that
Plaintiff[] allege[s] was misrepresented, suppressed, or
concealed," Delaney, 2007 WL 1420766, at *7, and no amendment
could cure the deficiency underlying Plaintiff's CFA claim –
namely, the fact that the Agreement's terms "are not misleading
or deceptive in any way."  Adamson, 463 F. Supp. 2d at 501.  The
deficiency in Plaintiff's CFA claim stems not from the Complaint
itself, but from the non-misleading Agreement upon which it is
based, which cannot be cured through the filing of an amended
complaint.

        Similarly, with regard to Plaintiff's good faith performance
claim, the Agreement's plain terms give Sovereign the discretion
to process its customers' transactions in precisely the manner
complained of here, and, as a matter of law, such an exercise of
discretion to "maximize [] profits," Wilson, 168 N.J. at 248,
fails to state a good faith performance claim.  And in view of
the fact that the conduct Plaintiff complains of "is permissible
under the terms of . . . [the parties'] express contract,"

<u>Dovale</u>, 2006 WL 2385099, at *8, no curative amendment could render viable Plaintiff's unjust enrichment claim.  <u>See</u> <u>VRG Corp.</u>, 135 N.J. at 554.  As with Plaintiff's CFA claim, it is not a shortcoming in Plaintiff's pleadings that renders deficient his common law claims.  Rather, it is the unambiguous provisions of the Agreement upon which Plaintiff's claims are based that undermines the viability of those claims.  In light of this fact, the Court concludes that permitting Plaintiff to amend his pleadings would be futile, <u>Jablonski</u>, 863 F.2d at 292, and will dismiss the claims asserted herein with prejudice.

## IV.  CONCLUSION

For the reasons discussed above, the Court will grant Defendant's motion to dismiss.  The accompanying Order is entered.

**June 12, 2009**                          **  s/ Jerome B. Simandle  **
Date                                      JEROME B. SIMANDLE
                                          United States District Judge